LAWYERS FOR CLEAN WATER, INC.
Drevet Hunt (Bar No. 240487)
        Email: drev@lawyersforcleanwater.com
Layne Friedrich (Bar No. 195431)
        Email: layne@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

SAN DIEGO COASTKEEPER
Matt O'Malley (Bar No. 272802)
        Email: matt@sdcoastkeeper.org
2825 Dewey Rd, Suite 200
San Diego, California 92106
Telephone: (619) 758-7743

*Attorneys for Plaintiff*
SAN DIEGO COASTKEEPER

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, <br><br> Plaintiff, <br> vs. <br><br> EDCO Disposal Corporation, a California corporation; <br><br> Defendant. | Civil Case No. 3:17-cv-1816-AJB-JLB <br><br> **CONSENT DECREE** <br><br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

# CONSENT DECREE

The following Consent Decree is entered into by and between San Diego Coastkeeper ("Coastkeeper" or "Plaintiff") and Defendant EDCO Disposal Corporation ("EDCO" or "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS,** Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, EDCO is the owner and operator of a solid waste refuse and transfer facility located at 3660 Dalbergia Street, San Diego, California, 92111, hereinafter referred to by the Settling Parties as the "Dalbergia Facility";

**WHEREAS**, Coastkeeper and EDCO have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint with respect to the Dalbergia Facility without further proceedings;

**WHEREAS**, Coastkeeper's members live and/or recreate in and around the waters which Coastkeeper's members allege receive discharges from the Dalbergia Facility, including specifically Chollas Creek and San Diego Bay;

**WHEREAS,** storm water and non-storm water discharges from the Dalbergia Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on May 5, 2017, Coastkeeper sent EDCO, the United States

Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Dalbergia Facility;

**WHEREAS**, on September 8, 2017, Coastkeeper filed a complaint against EDCO in the United States District Court, Southern District of California alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Dalbergia Facility ("Complaint");

**WHEREAS**, Coastkeeper alleges EDCO to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Dalbergia Facility;

**WHEREAS**, EDCO denies all allegations in the Notice Letter and Complaint relating to the Dalbergia Facility;

**WHEREAS**, all actions taken by EDCO pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.     Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Dalbergia Facility is located within this District;

3.     The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.      Plaintiff has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.      OBJECTIVES

6.      It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act and to resolve those issues alleged by Coastkeeper in its Complaint. In light of these objectives and as set forth fully below, EDCO agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act.

## II.     AGENCY REVIEW AND TERM OF CONSENT DECREE

7.      Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which are to be provided to EDCO. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

8.      The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

9.      This Consent Decree will terminate four (4) years after the completion of the project discussed in Exhibit A, item 4, unless prior to the termination date either Party has invoked the dispute resolution provisions of this Consent Decree and there is an ongoing, unresolved dispute regarding either Party's compliance with this Consent Decree, in which case the Consent Decree will terminate upon final resolution of the

1  dispute pursuant to the dispute resolution provisions contained herein.

2  **III.     COMMITMENTS OF THE SETTLING PARTIES.**

3          **A.     <u>Storm Water Pollution Control Best Management Practices</u>.**

4          10.     It is the express purpose of the Settling Parties entering into this Consent

5  Decree to further the objectives set forth in the Clean Water Act and to resolve those

6  issues alleged by Coastkeeper in its Complaint. In light of these objectives and as set

7  forth fully below, Defendant agrees, *inter alia*, to comply with the provisions of this

8  Consent Decree, the requirements of the Storm Water Permit, and all applicable

9  provisions of the CWA.

10         11.     In addition to maintaining the current structural and non-structural Best

11  Management Practices ("BMPs") described in the Dalbergia Facility's Storm Water

12  Pollution Prevention Plan ("SWPPP"), Defendant shall develop and implement BMPs

13  necessary to comply with the provisions of this Consent Decree and the Storm Water

14  Permit, including but not limited to those that achieve the Best Available Technology

15  Economically Achievable ("BAT") and the Best Conventional Treatment Technology

16  ("BCT") and to comply with the Storm Water Permit's Receiving Water Limitations.

17         12.     The list of BMPs that EDCO agrees to develop and/or implement for the

18  Dalbergia Facility as part of this Consent Decree is attached hereto as Exhibit A.

19         **B.     <u>Discharge Locations and Storm Water Sampling</u>.**

20         13.     <u>Discharge Locations</u>. The current storm water sample locations for the

21  Dalbergia Facility are identified in Exhibit B.

22         14.     <u>Sampling</u>. The following storm water monitoring procedures shall be

23  implemented at the EDCO Facilities:

24                 14.1.   <u>Frequency</u>. During the life of this Consent Decree, Defendant shall

25                         collect samples from all discharge locations at the Dalbergia Facility

26                         from a minimum of four (4) "qualified storm events" that occur in a

27                         reporting year such that Defendant collects two (2) samples during

28                         the first half of the reporting year and two (2) samples during the

second half of the reporting year. A "qualified storm event" or "QSE" is a storm event that produces a discharge from at least one drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Defendant has collected samples from two (2) or fewer qualified storm events, Defendant shall collect samples during as many qualified storm events as necessary until a minimum of 4 storm events have been sampled for the reporting year. No two (2) samples may be from the same storm event.

14.2.   <u>Contained or Stored Storm Water</u>. To the extent water is stored or contained, Defendant shall sample the stored or contained water at the Dalbergia Facility before it is released even if not during operating hours.

14.3.   <u>Parameters</u>. Defendant shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Limits.

14.4.   <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

14.5.   <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

14.6.   <u>Hold Time</u>. All samples collected from the Dalbergia Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements, such as pH, Defendant shall use portable instruments, and not pH paper, which shall be calibrated and used according to manufacturers' instructions and approved industry methodology, i.e., 40 C.F.R., Part 136.

14.7.    <u>Results</u>. Defendant shall request that sample analysis results be reported to them within ten (10) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

14.8.    <u>Concentrations</u>. Defendant shall request that all sample results for metals be reported by the laboratory in both total and dissolved concentrations, except for Mercury which shall be analyzed for total recoverable only.

14.9.    <u>Reporting</u>. Defendant shall provide Coastkeeper with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples collected at the Dalbergia Facility, within five (5) business days of receiving the results.

## C.    <u>Reduction of Pollutants in Discharges.</u>

15.    <u>Contaminant Reduction</u>. Unless otherwise provided by this Consent Decree, Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Dalbergia Facility to levels below those in Table 1 ("Numeric Limits").[1]

**Table 1. Numeric Limits**

| Pollutant | Values |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Dissolved Zinc ** | 0.21 mg/L |
| Dissolved Copper ** | 0.098 mg/L |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.750 mg/L |
| Total Recoverable Iron | 1.0 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |

[1] The Numeric Limits for metals marked with asterisk are hardness dependent, and may be adjusted as set out in Volume 65, No. 97 of the Federal Register, May 18, 2000, Rules and Regulations for both hardness and water effects ratios.  Numeric Limits for metals with a double asterisk are derived from the Water Effects Ratios adopted by the Regional Board pursuant to Resolution No. R9-2017-0015 (A Resolution Amending the Water Quality Control Plan for the San Diego Basin to Incorporate Site-Specific Water Effect Ratios into Water Quality Objectives for Toxic Pollutants and Total Maximum Daily Loads for Copper and Zinc in Chollas Creek and will only become effective once approved by the State Water Resources Control Board ("SWRCB").  Until such time as Resolution No. R9-2017-0015 has been approved by the SWRCB the Numeric Limits established in the Federal Register shall apply.

| Pollutant | Values |
|---|---|
| Dissolved Lead* | 0.065 mg/L |
| Total Recoverable Magnesium | 0.064 mg/L |
| Total Recoverable Mercury | 0.0014 mg/L |
| Enterococcus | 61 MPN/100 mL |
| Fecal Coliform | 400 MPN/100 mL |
| Chemical Oxygen Demand | 120 |
| pH | 6.5-8.5 s.u. |

16. Action Plan for Table 1 Exceedances.  The Settling Parties recognize that EDCO is in the process of designing, permitting and constructing storm water treatment systems intended to address storm water discharges at the Dalbergia facility. Therefore, while EDCO will continue to comply with the terms of the Storm Water Permit, the terms of these paragraphs 16-18 will apply starting January 1, 2020.  However, should EDCO report an exceedance of any of the values in Table 1 as part of its annual reports pursuant to the General Permit during the period commencing after the Effective Date of this agreement but prior to January 1, 2020, EDCO will prepare an Action Plan to address such exceedances, but such Action Plan shall not be required to consider or propose the use of additional structural BMPs. If, after January 1, 2020, Defendant's monitoring reveals an exceedance of the numeric limits specified in Table 1 for any pollutant between January and July, and between July and December, Defendant shall certify and submit an Action Plan for reducing the level of the pollutant to Table 1 Limits, which may consider structural BMPs if appropriate. Any Action Plan required by this paragraph, shall be prepared by a QISP and must be submitted to Plaintiff within thirty (30) days of Defendant's receipt of sampling data showing the exceedance of the limit for the same pollutant listed in Table 1 Numeric Limits. Submitting an Action Plan that does not include all of the requirements in this paragraph will be considered a missed deadline.

16.1. Action Plan Requirements. An Action Plan shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) either (a) the identification of additional BMPs, including both preventing the exposure of pollutant and pollutant sources to storm water and further treatment of storm water prior to discharge from the EDCO Facilities that will reduce pollutant concentrations to those below Table 1 Numeric Limits, or, (b) for those contaminants where there is no California Toxics Rule or other established receiving water limitation, the identification of and demonstration that BMPs EDCO has developed and implemented achieve BAT/BCT, and that further BMPs will not achieve the numeric values established in Table; and (4) time schedules for implementation of the proposed BMPs (if any). The time schedule(s) for implementation of additional BMPs shall ensure that all BMPs are implemented as soon as possible but no more than ninety (90) days after Coastkeeper provides EDCO comments on the Action Plan, unless the Settling Parties agree on a later date based on the time needed to design, permit, procure, and install the necessary equipment, or implementation within the required time period is not possible due to Force Majeure, as defined in paragraph 42, below. Coastkeeper will not unreasonably withhold agreement to extend the deadline, as needed. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Article VI below.

16.2. Action Plan Review. Coastkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with

comments on the Action Plan. Within twenty-one (21) days of Defendant's receipt of Coastkeeper's comments on the Action Plan, Defendant shall consider Coastkeeper's comments and shall either incorporate them into the Action Plan or, if Defendant declines to accept one or more of Coastkeeper's comments, provide Coastkeeper with a written explanation of the grounds for rejection.

16.3.   Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Article VI below.

16.4.   Defendant can discontinue storm water sample analysis of a parameter listed in Table 1 if (1) the concentration of the parameter for each discharge location and drainage area does not exceed the Table 1 Numeric Limit in at least four (4) consecutive storm water samples from a QSE occurring after the Effective Date of this Consent Decree and (2) Defendant certifies and demonstrates that the parameter either is not associated with its industrial activity or is not likely to be present on site in significant quantities even though the Dalbergia Facility is a waste transfer station that cannot completely control the materials that may be present on site. Defendant shall contact Plaintiff at least ninety (90) days prior to discontinuing analysis for any required parameter by providing a written explanation for its decision and all relevant laboratory reports and supporting documentation.

16.5.   The provisions of this Consent Decree will not apply to the Dalbergia facility if the Dalbergia facility applies for and receives approval from the Regional Water Quality Control Board for a "No Exposure

Certification" as that term is defined by the Storm Water Permit, provided that facility remains in full compliance with the requirements of the No Exposure Certification for the remainder of the term of this Consent Decree. Provided, however, that EDCO shall notify Plaintiff ten (10) calendar days prior to the filing of a No Exposure Certification of EDCO's intent to do so.

16.6. The provisions of this Consent Decree will not apply if the Dalbergia facility applies for and receives approval from the Regional Water Quality Control Board for a "Notice of Termination" as that term is defined by the Storm Water Permit. Provided, however, that EDCO shall notify Plaintiff ten (10) calendar days prior to the filing of a Notice of Termination of EDCO's intent to do so.

17.     Defendant shall contact Plaintiff to request an extension of any deadline set forth in this Consent Decree, if necessary, at least fourteen (14) days prior to the deadline at issue. Failure to request an extension in this timeframe will be considered a missed deadline. Plaintiff's consent to Defendant's requested extension shall not be unreasonably withheld.

18.     Defendant shall revise its SWPPP and/or Monitoring & Reporting Plan ("M&RP") as applicable within thirty (30) days of receipt of Plaintiff's Action Plan comments to reflect the changes and/or additional BMPs set forth in the Action Plan. Defendant shall notify Coastkeeper in writing when the final Action Plan has been completely implemented, and the SWPPP and/or M&RP have been revised.

D.     **Visual Observations.**

19.     All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree, and shall include at least the following:

19.1. <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct visual observations at each point where storm water is discharged during each Qualifying Rain Event.

19.2.   <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge point.

20.   Defendant shall maintain logs of the visual observations, which shall be included in Defendant's Annual Reports in conformance with the Storm Water Permit, and submitted to Coastkeeper concurrent with Defendant's submission of its Annual Report to the State Board or Regional Board.

**E.   Employee Training.**

21.   Within forty-five (45) days of the Effective Date, Defendant shall conduct additional employee training in order to familiarize employees at the Dalbergia Facility with the requirements of the Storm Water Permit and this Consent Decree. The training program shall include use of written training materials needed for effective implementation of the training program. Defendant shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

22.   The training program shall require at least the following:

22.1.   <u>Non-Storm Water Discharge Training</u>. Defendant shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the Dalbergia Facility, and how to detect and prevent them;

22.2.   <u>BMP Training</u>. Defendant shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of

storm water at the Dalbergia Facility;

22.3.   <u>Sampling Training</u>. Defendant shall designate an adequate number of employees or consultants to ensure the collection of storm water samples from each discharge location as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

22.4.   <u>Visual Observation Training</u>. Defendant shall provide training to all individuals performing visual observations at the Dalbergia Facility pursuant to this Consent Decree and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

23.     Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Defendant who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Dalbergia Facility's SWPPP and M&RP, as appropriate to the particular employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within ten (10) days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree.

24.     Defendant shall maintain training records to document compliance with Article II.E of this Consent Decree, and shall make these records available for Plaintiff's review at the Dalbergia Facility upon request. The Training Program shall be specified in

the SWPPP and Defendant shall modify the SWPPP as necessary to reflect the training program required by this Consent Decree.

**F.**     **Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

25.     Within sixty (60) days of the Effective Date of this Consent Decree, Defendant shall revise the Dalbergia Facility's SWPPP and/or M&RP as applicable to include:

25.1.   All BMPs that are currently utilized at the Dalbergia Facility;

25.2.   All BMPs identified and developed pursuant to this Consent Decree and/or the Storm Water Permit;

25.3.   The specific individual(s) or positions responsible for compliance with the Storm Water Permit and this Consent Decree;

25.4.   A detailed site map that includes at a minimum all information required by the Storm Water Permit and this Consent Decree;

25.5.   A description of each industrial activity, all potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source;

25.6.   Incorporate the requirements of the Storm Water Permit and this Consent Decree.

26.     Additional and Ongoing Revisions to SWPPP and/or M&RP. Defendant shall revise the SWPPP and/or M&RP if there are any changes in the Dalbergia Facility's operations that may possibly affect the quality of storm water discharges at the Dalbergia Facility, including but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs at the Dalbergia Facility resulting from an Action Plan.

27.     Commenting on Revised SWPPP and/or M&RP. Defendant shall submit any revised SWPPP and/or M&RP to Coastkeeper within five (5) days of completion.

27.1.For any SWPPP or M&RP revisions that are not the result of an

Action Plan, Coastkeeper shall provide comments, if any, to Defendant within thirty (30) days of receipt of any revised SWPPP and M&RP. Within thirty (30) days of receiving comments from Coastkeeper, Defendant shall incorporate Coastkeeper's comments into any revised SWPPP and/or M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Article VI below.

## IV.   COMPLIANCE MONITORING AND REPORTING

28.    Site Inspections. Each Reporting Year for the life of this Consent Decree, Plaintiff and its representatives may conduct up to two (2) noticed site inspections per Wet Season and, one (1) dry weather inspection (for a total of three (3) inspections per Reporting Year), plus an additional inspection if there is a dispute regarding compliance with the terms of this Consent Decree. The site inspections shall occur during normal business hours, and Plaintiff shall provide Defendant with three (3) days' notice of an intended inspection. If a Wet Season inspection is noticed, Coastkeeper will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure Coastkeeper conducts its inspection during a Qualifying Rain Event. Coastkeeper will make efforts to conduct its inspection during a QSE, but a lack of a QSE will not prevent Coastkeeper from conducting its inspection. During inspections, Plaintiff's representatives will wear safety goggles, hard hats, vests, and appropriate clothing and footwear and remain in the presence of Defendant's representatives at all times. Plaintiff's inspection team shall consist of no more than three (3) persons each of whom shall have executed the liability release attached hereto as Exhibit C.

29.    During the site inspection, Plaintiff and/or its representatives shall be allowed access to the Dalbergia Facility's SWPPP, M&RP, and other monitoring records, reports, and sampling data for the Dalbergia Facility. In addition, during the site

inspection, Plaintiff and/or its representatives may collect split samples of discharges from Qualifying Storm Events, even if outside of the first four hours of discharge, from the Dalbergia Facility. Plaintiff shall provide EDCO with properly preserved split samples.  Any samples collected by Plaintiff shall be submitted to a certified California laboratory for analysis. Any on site measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments.  EDCO, shall have an opportunity to take concurrent measurements using its own equipment.  Copies of the complete laboratory reports shall be provided to Defendant within five (5) business days of receipt. Plaintiff shall bear all costs of inspection, sampling, and analysis using funds provided by Defendant pursuant to paragraph 31.

30.   <u>Reporting and Documents</u>. During the life of this Consent Decree, Defendant shall copy Plaintiff on all documents related to water quality at the Dalbergia Facilities that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiff concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Defendant's compliance with the Storm Water Permit or storm water quality received by Defendant from any regulatory agency, State or local agency, county or municipality shall be provided to Coastkeeper within ten (10) business days of receipt by Defendant.

31.   <u>Compliance Monitoring and Oversight</u>.  EDCO shall pay a total of Seven Thousand Five Hundred Dollars ($7,500) to compensate Coastkeeper for costs and fees to be incurred for monitoring the Dalbergia Facility's compliance with this Consent Decree.  Payment shall be made within five (5) business days of the Effective Date payable to "San Diego Coastkeeper" via certified U.S. Mail to San Diego Coastkeeper, 2825 Dewey Road, Suite 200, San Diego California 92106.

32.   <u>Action Plan Payment</u>.  EDCO shall pay Three Thousand Dollars ($3,000) each time an Action Plan is submitted to Coastkeeper.  Payments shall be submitted simultaneously with the submittal of the Action Plan.  Payments shall be payable to "San

Diego Coastkeeper" via certified U.S. Mail to San Diego Coastkeeper, 2825 Dewey Road, Suite 200, San Diego California 92106.

## V.    Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Payments

33.    Environmental Project. To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, EDCO agrees to make a payment totaling Ten Thousand Dollars ($10,000) to Groundwork San Diego-Chollas Creek ("Groundwork") to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities in the Southern California Bight and its tributaries. Payment shall be made payable to: Groundwork San Diego – Chollas Creek, Attn: Leslie Reynolds, 5106 Federal Blvd. Suite # 203, San Diego, CA 92105 within ten (10) days of the Effective Date..

34.    Reimbursement of Coastkeeper's Fees and Costs. EDCO shall pay a total of Forty One Thousand Two Hundred Fifty Dollars ($41,250)  to Coastkeeper to reimburse Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payments shall be made within ten (10) days of the Effective Date and payable to: "Lawyers for Clean Water Attorney Client Trust Account," delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

35.    Stipulated Payment. Defendant shall make a stipulated payment of One Thousand Dollars ($1,000.00) for each and every missed deadline included in this Consent Decree. Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Southern California Bight and its tributaries. The Stipulated Payment shall be paid to ] Groundworks, and mailed via certified mail or overnight delivery to: Groundwork San Diego – Chollas Creek, Attn: Leslie Reynolds, 5106 Federal Blvd. Suite # 203, San Diego, CA 92105.. Defendant shall make the Stipulated Payment within thirty (30) days of a missed deadline. Defendant shall provide

Plaintiff with a copy of such payment at the time it is made.

36.    Interest Payments. In the event of a missed deadline included in this Consent Decree, the Defendant shall pay interest judgment interest pursuant to ten percent (10%) APR interest, which shall accrue from the first day past the date the payment, was due until the date Plaintiff receives the payment. All such payments shall be made payable to the entity to which the missed payment was owed.

## VI.    DISPUTE RESOLUTION

37.    This Court shall retain jurisdiction over this matter until the final termination date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.    Meet and Confer. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

39.    If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Southern District of California. The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

40.    Burden of Proof.

a.            Except as provided in subparagraph (b) below, the burden of proof for Formal Dispute Resolution shall be in accordance with applicable law.

b.        In the event of any disagreement or dispute between Plaintiff and

Defendant over the necessity or appropriateness of implementing any particular BMP or set of BMPs, Defendant shall bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the Dalbergia Facility, or that it is in compliance with the terms of this Consent Decree. Plaintiff shall not be required to prove that Defendant's BMPs do not constitute BAT/BCT.

41.     Litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and 1319, and case law interpreting that standard.

42.     Force Majeure.  No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay.  Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other

obligations required under this Consent Decree.

a. If Defendant claims compliance was or is impossible, it shall notify Plaintiff in writing as soon as possible, but in no event more than five (5) business days of the date that Defendant learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

b. Within ten (10) days of sending the Notice of Nonperformance, Defendant shall send Plaintiff a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

c. The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or issue in paragraph 42.a, despite the timely good faith efforts of Defendant, new deadlines shall be established.

d. If Plaintiff disagrees with Defendant's notice of impossibility and/or Force Majeure, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VII.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

43.    <u>Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents,

attorneys, and other representatives releases all persons including, without limitation, EDCO (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the termination of this Consent Decree.

44.   EDCO's Release. Upon the Effective Date of this Consent Decree, EDCO, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Coastkeeper's Notice Letter and Complaint up to the termination of this Consent Decree by the Court.

45.   Nothing in this Consent Decree limits or otherwise affects either Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to EDCO's compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VIII.   MISCELLANEOUS PROVISIONS

46.   No Admission of Liability. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission

of violation of any law, rule, or regulation. EDCO maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

47.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

48.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

49.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.     <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff</u>:

Matt O'Malley
San Diego Coastkeeper
2825 Dewey Rd., #200
San Diego, CA 92106

<u>If to EDCO</u>:

Steve South
EDCO
1044 W. Washington St.
Escondido, CA  92025

With a copy to:

Linda Beresford
Environmental Law Group
225 Broadway, Suite 1900
San Diego, CA 92101

51.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or

communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

52.   <u>Effect of Consent Decree</u>. Except as provided herein, Coastkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that EDCO's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of EDCO to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

53.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

54.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

55.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

56.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

57.   <u>Authority</u>. The undersigned representatives for Plaintiff and EDCO each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

58.     The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

59.     The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: <u>September 8, 2017</u>          By: _____/s/_____

        Matt O'Malley
        San Diego Coastkeeper

Dated: <u>September 7, 2017</u>          By: _____/s/_____

        EDCO Disposal Corporation

APPROVED AS TO FORM

Dated: <u>September 8, 2017</u>          By: <u>s/   Drevet Hunt</u>

        Drevet Hunt
        Lawyers for Clean Water, Inc.
        Attorney for Plaintiff
        Email: Drev@lawyersforcelanwater.com

Dated: <u>September 7, 2017</u>          By: _____/s/_____

        Linda Beresford
        Environmental Law Group LLP
        Attorney for EDCO
        Email: lindab@envirolawyer.com

**IT IS SO ORDERED**

Dated:  November 3, 2017

        Hon. Anthony J. Battaglia
        United States District Judge